IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Zana J. Powell, ) | C/A No. 0:10-2920-JFA-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Michael J. Astrue, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

    This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC et seq. The plaintiff, Zana Powell ("Powell"), brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying her claims for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

## ADMINISTRATIVE PROCEEDINGS

    In June 2007, Powell applied for SSI and DIB. Powell's applications were denied initially and on reconsideration and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on February 4, 2010 at which Powell appeared and testified and was represented by John B. Duggan, Esquire. After hearing testimony from a vocational expert, the ALJ issued a decision dated March 8, 2010 finding that Powell was not disabled. (Tr. 10-27.)

    Powell was born in 1974 and was thirty-one years old at the time of her disability onset date. (Tr. 219.) She has a high school education, an Emergency Medical Technician ("EMT")

certification, and past relevant work experience as an EMT. (Tr. 142, 147-48.) Powell alleges disability since May 31, 2005 due to fibromyalgia, psychotic episodes, and anemia. (Tr. 141.)

The ALJ made the following findings and conclusions:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2010.

2. The claimant has not engaged in any substantial gainful activity since May 31, 2005, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

    \* \* \*

3. The claimant has the following severe impairments: fibromyalgia, degenerative disc disease of the back, anemia, generalized anxiety disorder with psychosis and personality disorder (20 CFR 404.1520(c) and 416.920(c)).

    \* \* \*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

    \* \* \*

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform simple, routine unskilled light work as defined in 20 CFR 404.1567(b) and 416.967(b) with no contact with the public as customers; the need to work alone or in a small group; with occasional climbing of ramps or stairs and occasional stooping and crouching; with no climbing of ladders, ropes or scaffolds, kneeling or crawling; and avoiding all exposure to vibration, heights and dangerous moving machinery.

    \* \* \*

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

    \* \* \*

7. The claimant was born on [REDACTED], 1974 and was 31 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has

> transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

\* \* \*

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 31, 2005 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 10-18.)

On September 22, 2010, the Appeals Council denied Powell's request for review, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-3.) This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

(3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4) whether the claimant can perform [her] past relevant work; and

(5) whether the claimant's impairments prevent [her] from doing any other kind of work.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence,

make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## ISSUE

Powell raises the following issue for this judicial review: "Is the conclusion of the administrative law judge that Mrs. Powell was not disabled because she could perform light work supported by substantial evidence of record?" (Pl.'s Br., ECF No. 13.)

## DISCUSSION

The crux of Powell's argument appears to be that the ALJ's decision is not supported by substantial evidence based on her medical records.[1] While Powell concedes that no treating or examining physician has issued an opinion concerning Powell's alleged disability, she contends that the medical evidence mentions significant restrictions. Powell states that her testimony was credible because it was consistent with the medical evidence. Powell also argues that the ALJ should have considered the number of days that Powell received medical treatment between her alleged onset date, May 31, 2005, and the date of the hearing, February 4, 2010, and concluded that Powell would have missed work on each of those occasions, which supports a conclusion that Powell is disabled.

In support of her arguments, Powell first summarizes the medical evidence included in the record, which appears to cover the time period from December 2001 through November 2009.[2]

---

[1] To the extent that Powell's argument may be construed as seeking a *de novo* review of the evidence in the record, the court notes that, as stated above, the proper standard of review is not *de novo* but is whether the ALJ's decision is supported by substantial evidence and is reached through a correct application of the law.

[2] The court observes that Powell's medical treatment does not appear to be disputed by the parties and that the ALJ included a summary of Powell's medical treatment in his opinion. (Tr. 12-14.)

Powell then points to selective statements in her voluminous medical records that she argues demonstrate significant restrictions. For example, Powell states that Dr. Ronald Thompson opined in 2007 following a consultative examination that Powell "could probably maintain pace and persistence for short periods of time in a minimally stressful environment, as long as she would be able to take frequent breaks." (Pl.'s Br. at 17, ECF No. 13 at 17) (quoting Tr. 734). Powell argues that her medical records show that she has poor memory or recall, poor judgment, chronic pain, limited range of motion, fatigue, depression, and anxiety, and that she struggles in handling life situations. Further, Powell asserts that the records show that she was taking potent narcotic medications and psychotropic medications that are known to have significant limiting side effects. Powell also relies on a medical record demonstrating that upon discharge from Carolina Center for Behavioral Health in March 2006, she had a global assessment of functioning ("GAF") score of 50.[3]

As stated above, after reviewing all of the evidence, the ALJ found that Powell had the following severe impairments: fibromyalgia, degenerative disc disease of the back, anemia, generalized anxiety disorder with psychosis, and personality disorder. (Tr. 10.) The ALJ also found that Powell retained the residual functional capacity ("RFC") to

> perform simple, routine unskilled light work as defined in 20 CFR 404.1567(b) and 416.967(b) with no contact with the public as customers; the need to work alone or in a small group; with occasional climbing of ramps or stairs and occasional stooping

---

[3] The American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, fourth edition ("DSM–IV"), contains a numeric scale (0 through 100) used to rate the severity of psychological symptoms and/or social, occupational, or school functioning. According to the DSM–IV, a GAF score between 41 and 50 may reflect "[s]erious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job)." Id. at 34. A GAF score may reflect the severity of symptoms or impairment in functioning at the time of the evaluation. Id. at 32-33; see also Parker v. Astrue, 664 F. Supp. 2d 544, 557 (D.S.C. 2009) (stating that "Plaintiff's GAF score is only a snapshot in time, and not indicative of Plaintiff's long term level of functioning").

> and crouching; with no climbing of ladders, ropes or scaffolds, kneeling or crawling; and avoiding all exposure to vibration, heights and dangerous moving machinery.

(Tr. 11-12.) In the ALJ's discussion of Powell's RFC, he also found that Powell "is capable of understanding and remembering short[,] simple instructions, is capable of performing simple tasks for 2+ hours without special supervision, and is capable of maintaining a regular work schedule but may miss an occasional day due to psychological symptoms." (Tr. 15.)

Upon review of the medical evidence, the court observes that many of the above restrictions that Powell argues are contained in the medical records are accounted for in the ALJ's findings. Further, even if Powell has pointed to selective evidence that may support a more restrictive RFC, the court finds that Powell has failed to demonstrate that the ALJ's opinion is unsupported by substantial evidence. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence).

To the extent that Powell argues that the ALJ erred in assessing her credibility, upon review of Powell's argument and the ALJ's decision, the court finds that reversal is not warranted on this ground. Powell appears to summarily argue that her testimony was credible because it was consistent with the medical evidence and the nature and severity of her impairments.

In evaluating subjective complaints, the United States Court of Appeals for the Fourth Circuit has stated that "the determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). In this matter only the second

step is at issue,[4] during which the ALJ must expressly consider "the intensity and persistence of the claimant's [symptom] and the extent to which it affects her ability to work." Id. In making these determinations, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. "[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded *solely* because they are not substantiated by objective medical evidence." Id. (emphasis added). "This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work." Craig, 76 F.3d at 595. A claimant's subjective complaints "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges she suffers." Id. Further, "[i]n analyzing a claimant's subjective complaints, such as pain, an ALJ must consider: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the condition; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions." Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (citing Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984)).

Upon review of the ALJ's decision, the record, and the parties' briefs, the court finds that Powell has failed to demonstrate that the ALJ's credibility analysis is unsupported by substantial

---

[4] The first step requires there to "be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig, 76 F.3d at 594 (internal quotation omitted).

evidence or controlled by an error of law. The ALJ conducted a two-step credibility analysis and found that Powell had satisfied the first step, *i.e.* that there was objective medical evidence that showed the existence of medical impairments which could reasonably be expected to produce the pain or other symptoms alleged. However, at step two the ALJ observed that (1) no physician had limited Powell's physical activities; (2) Powell had no limitations on her ability to perform activities of daily living; (3) Powell had not reported any significant side effects from her medications; (4) there was a "paucity of objective findings or abnormality and the lack of substantiation of the asserted degree of impairments by the clinical findings;" and (5) Powell's treatment notes did not document strength deficits, neurological deficits, atrophy, or weight change.[5] (Tr. 15.) The ALJ further considered that Powell's "described daily activities are indicative of a fairly active and varied lifestyle and are not representative of a significant restriction of activities, constriction of interests, or impaired social functioning" and that she "sat without any visible signs of discomfort and exited the courtroom without any problem with a normal gait and used no assistive device when ambulating." (Tr. 16.)

The ALJ also discounted Powell's credibility based in part upon the stated consideration of "the lack of emergency room visits, intensive inpatient or outpatient hospital visits, no other surgical intervention, [and] no specialized treatment." (Tr. 15.) The ALJ further noted that the record did not contain "records of any emergency treatments or any surgical interventions." (Id.) These statements appear to be inconsistent with Powell's medical treatment history, which the ALJ accurately summarized earlier in the opinion. Therefore, it appears that these statements may have been inadvertently included in the ALJ's analysis. However, even assuming that they were not and

---

[5] In fact, the ALJ observed that Powell testified that since her surgery in October 2009, which included gall bladder surgery and reconstructive surgery for an obstruction problem, she had gained weight. (Tr. 14.)

assuming, without finding, that the ALJ erred in rejecting Powell's credibility on this basis, this does not render the ALJ's credibility analysis unsupported by substantial evidence, as this was but one factor amongst several that the ALJ considered.

Accordingly, based on all of the foregoing, the court finds that Powell has failed to demonstrate that the ALJ's decision with regard to Powell's credibility is unsupported by substantial evidence or controlled by an error of law.  See Hines v. Barnhart, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (noting that a claimant's allegations "need not be accepted to the extent that they are inconsistent with available evidence"); Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (noting that a claimant's routine activities, including reading, cooking, exercising, attending church, cleaning house, washing dishes, doing laundry, and visiting, were inconsistent with her complaints); Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) ( "The only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life."); Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) (*per curiam*) (finding that the ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints); Flowers v. Apfel, 1999 WL 150491, at *2 (4th Cir. 1999) (finding that a claimant's alleged limitations were not supported by the record when they were never reported to his treating physician); see also Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]").

Finally, Powell argues that the ALJ should have considered the number of days that Powell received medical treatment between her alleged onset date, May 31, 2005, and the date of the hearing, February 4, 2010, and concluded that Powell would have missed work on each of those occasions, which supports a conclusion that Powell is disabled.  The court finds this argument

speculative. It appears that for much the relevant time period, Powell often utilized the local hospitals or urgent care centers as her primary health care source. Further, Powell's argument is based on the unsupported premise that each time Powell received medical treatment, it would be during working hours and would require Powell to miss an entire day of work. The court finds that this argument does not render the ALJ's decision unsupported by substantial evidence. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hays, 907 F.2d at 1456 (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence).

## RECOMMENDATION

For the foregoing reasons, the court finds that Powell has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

September 27, 2011
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).